**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Lachae Vickers, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Biolife Health and Wellness, LLC, Linkup Media Group of Companies, Inc., and David Annakie,<br><br>Defendants. | CASE NO.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## Nature of this Action

1. Lachae Vickers ("Plaintiff") brings this action against Biolife Health and Wellness, LLC ("Biolife"), Linkup Media Group of Companies, Inc. ("Linkup"), and David Annakie (collectively, "Defendants") under the Telephone Consumer Protection Act ("TCPA").

2. Upon information and belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by placing more than one advertisement or marketing telephone call to residential or cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

3. Additionally, upon information and belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4) by delivering more than one advertisement or telemarketing message to residential or cellular telephone numbers while failing to identify "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

4. Lastly, upon information and belief, Defendants routinely violate 47 U.S.C. §

227(c)(5) and 47 C.F.R. § 64.1200(d) by delivering more than one advertisement or telemarketing call or text message to residential or cellular telephone numbers while failing to maintain a list of persons who request not to receive such calls made by or on behalf of that person (an "Internal DNC List") or honor their do-not-call requests.

**Parties**

5. Plaintiff is a natural person who, at all relevant times, resided in Shirley, New York.

6. Biolife is a retailer of non-medical nutritional supplements headquartered in New York, New York and incorporated in New York.

7. Linkup is the parent company of Biolife, and describes itself as "the flagship corporation of powerful entertainment groups, premium health products and life improvement operations catering to the Multicultural Communities globally."[1]

8. Linkup is headquartered in New York, New York and incorporated in New York.

9. Mr. Annakie is the CEO and Founder of Linkup and Biolife, and resides in Greenwich, Connecticut.

**Jurisdiction and Venue**

10. This Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5), and 28 U.S.C. § 1331.

11. Venue is proper before this Court under 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this district and a significant portion of the events giving rise to this action occurred in this district.

12. In particular, Defendants directed their text messages to Plaintiff's residential

---

[1] https://www.linkedin.com/company/linkup-media-group-of-companies/about/ (last visited March 5, 2025).

telephone in this district, and Plaintiff received Defendants' text messages in this district.

**Factual Allegations**

13. Plaintiff is and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(718) 717-XXXX.

14. Plaintiff uses her cellular telephone as her personal residential telephone number.

15. In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC Registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

16. On August 24, 2022, Plaintiff registered her cellular telephone number on the DNC Registry .

17. In early 2021, in response to a radio advertisement for a Biolife product, Plaintiff called Biolife and ordered a single product from Biolife.

18. In that transaction, Plaintiff did not sign any documents, nor did Plaintiff give Biolife her written consent to deliver telemarketing messages to her residential telephone number.

19. However, in or around May 2021 and continuing until Summer 2022, Plaintiff began receiving text messages on her cellular telephone from a series of rotating telephone numbers:


850
+1 (844) 397-5531
only $199. Call today at 7185695648 while supplies last!
Fri, Apr 29, 11:21 AM
We have hand selected you to get 4 Biolife Plus 32oz for only $299. Call today at 7185695648, ends 6PM. Opt-out using the following link https://sends.ms/082ne5
Fri, Apr 29, 1:04 PM
We have hand selected you to get 4 Biolife Plus Supreme 32oz bottles for only $299. Call today at 7185695648, This ends before 6pm!
Stop
NETWORK MSG: You replied with the word "stop" which blocks all texts sent from this number.
Text back "unstop" to receive messages again.
855
+1 (844) 247-3143
Biolife: Shhh! Exclusive for you! 1 year of Biolife Sup 32oz & Bio cleanse! 10 biolife, 10 Biocleanse $599 or ask about our $99 package Call 7185-695-648
Fuck off
Wed, Jun 8, 1:43 PM
We have hand selected you to get 3 Biolife Plus Supreme 32oz bottles for only $199. Call today at 7185695648, This ends before 6pm!
Anything goes Wednesdays! - get any biolife product for $69 with min order of 3. Call 718-569-5648 NOW!
Stop
NETWORK MSG: You replied with the word "stop" which blocks all texts sent from this number.
Text back "unstop" to receive
841
+1 (844) 292-8638
Text Message
Wed, Dec 15, 11:05 AM
David here your CEO of Biolife, I've hand selected you to receive 4Biolife Plus Supreme, JUMBO size for $299. Call me directly at 718-521-5999, stop to opt out.
Wed, Dec 15, 12:10 PM
This is your CEO of Biolife, Last Call! I've hand selected you to get 4Biolife Plus Supreme 32oz for $299. Call me directly at 718-521-5999, stop to opt out.
Thu, Dec 16, 7:04 AM
Stop
NETWORK MSG: You replied with the word "stop" which blocks all texts sent from this number.
Text back "unstop" to receive messages again.
844
+1 (844) 397-5531
only $199. Call today at 7185695648 while supplies last!
Fri, Apr 29, 11:21 AM
We have hand selected you to get 4 Biolife Plus 32oz for only $299. Call today at 7185695648, ends 6PM. Opt-out using the following link https://sends.ms/082ne5
Fri, Apr 29, 1:04 PM
We have hand selected you to get 4 Biolife Plus Supreme 32oz bottles for only $299. Call today at 7185695648, This ends before 6pm!
Stop
NETWORK MSG: You replied with the word "stop" which blocks all texts sent from this number.
Text back "unstop" to receive messages again.
844
+1 (844) 397-5522
Text Message
Fri, Apr 1, 2:11 PM
Biolife: Power up with Biolife Herbs -Flashback Friday .Just for a few hours, 2 Biolife 32 oz for $99. THIS IS WHILE SUPPLIES LAST! CALL 718-569-5648 NOW!
Fri, Apr 1, 10:57 PM
Stop
NETWORK MSG: You replied with the word "stop" which blocks all texts sent from this number.
Text back "unstop" to receive messages again.
856
+1 (844) 247-3142
before 6pm.
Wed, Jun 1, 3:24 PM
YOU ASKED WE DELIVER! JUST FOR YOU, YES YOU! We have extended our Memorial Sale 6Biolife Plus Supreme and 6 Moringa for only $299. Call 718-569-5648 before 6pm
Fri, Jun 3, 1:14 PM
It's the weekend & you have been selected to get 4 biolife plus supreme for 299 with No shipping & free cleanse call 718-569-5648
Fri, Jun 3, 2:32 PM
It's the weekend & you have been selected to get 4 biolife plus supreme for 299 with No shipping & free cleanse call 718-569-5648
Wed, Jun 8, 5:08 AM
Stop




20. Because they were regularly changing, Plaintiff did not recognize the phone numbers associated with each of these text messages.

21. On more than one occasion, Plaintiff received text messages advertising Biolife products stating that the sender of those specific messages was Mr. Annakie.

22. Plaintiff is not, and was not, interested in purchasing Biolife's services or products.

23. However, despite Plaintiff's numerous attempts to get Biolife to stop delivering telemarketing messages to her residential telephone number, Biolife continued to deliver text messages to Plaintiff's telephone number.

24. In fact, on at least one occasion, Plaintiff called in to a radio show run by Mr. Annakie and personally requested that he and his companies stop delivering telemarketing messages to her residential telephone number.

25. Each of Biolife's text messages advertised products or sales, and each of these text messages was delivered for the purpose of advertising the commercial availability of Biolife's various products.

26. Plaintiff estimates that she has received substantially more than one hundred similar text messages from Biolife advertising its products and services.

27. Most egregious, Plaintiff previously sued Defendants for this very conduct, in the matter captioned *Lachae Vickers v. David Annakie et al*, Case No. 1:22cv6498 (E.D.N.Y.), which was ultimately closed via a voluntary dismissal with prejudice filed by Plaintiff in December, 2022.

28. Then, with no prompting or action on behalf of Plaintiff, Defendants suddenly restarted their telemarketing campaign anew in December 2024, sending a new stream of text messages advertising Defendants' goods and services:






29. Plaintiff did not give Defendants prior express written consent to send text messages to her cellular telephone number.

30. Plaintiff did not give Defendants prior express invitation or permission to send advertisement or marketing text messages to her cellular telephone number.

31. Moreover, Plaintiff had repeatedly revoked, by phone call, text message response, and filing a lawsuit on this very issue, any consent or permission that Defendants may have *thought* they had to deliver telemarketing text messages to Plaintiff's cellular telephone number.

32. Defendants sent the text messages at issue for non-emergency purposes.

33. Defendants sent the text messages at issue voluntarily.

34. The purpose of the text messages at issue was to advertise and to market Defendants' business or services.

35. Plaintiff suffered actual harm as a result of the text messages at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

36. Upon information and belief, because Defendants failed to heed Plaintiff's "stop" instruction and sent numerous text messages to Plaintiff's cellular telephone number after she repeatedly instructed Defendants to "stop", Defendants either (1) failed to implement or maintain an Internal DNC List whatsoever; (2) failed to maintain an adequate written policy for honoring revocation or Internal DNC List requests; (3) failed to adequately train its employees or personnel regarding its Internal DNC List; or (4) failed to adequately record revocation or Internal DNC List requests.

37. Had Defendants maintained or adhered to an Internal DNC List or external do-not-call list, Defendants would not have sent text messages to Plaintiff after her "stop" instructions, or after Plaintiff sued Defendants to get them to stop sending text messages to her cellular telephone number.

38. Defendants knowingly and willfully sent the text messages to Plaintiff without obtaining her prior express written consent and without maintaining an Internal DNC List, as evidenced by the fact that Defendants restarted their telemarketing campaign to Plaintiff's cellular telephone number *after she sued Defendants for that very conduct*.

39. Upon information and belief, Biolife sent the text messages at issue on behalf of, for the benefit of, and at the direction of, both Linkup and Mr. Annakie.

40. Upon information and belief, Biolife's operations are controlled by both Linkup and Mr. Annakie.

41. Upon information and belief, both Linkup and Mr. Annakie authorized Biolife to send the text messages at issue.

42. Upon information and belief, both Linkup and Mr. Annakie ratified Biolife's transmission of the text messages at issue by knowingly accepting the benefits of Biolife's conduct.

43. Upon information and belief, Mr. Annakie personally delivered at least some of the text messages at issue, based on the representations "David here your CEO of Biolife . . ." and "This is your CEO of Biolife, Last Call!"

44. In the alternative, if Mr. Annakie contends that he did not send those text messages, Defendants additionally violated 47 C.F.R. § 64.1200(d)(4)—enforceable through 47 U.S.C. § 227(c)(5)—by falsely representing the identity of the sender of the text messages at issue.

45. Defendants knew, or should have known, that Plaintiff registered her cellular telephone number with the DNC Registry.

46. Upon information and good faith belief, because Defendants failed to heed Plaintiff's repeated "stop" instructions, Defendants did not maintain or adhere to any internal or external do-not call lists.

## Class Action Allegations

47. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes (the "Classes"):

**Federal Do-Not-Call Registry Class:**

> All persons throughout the United States (1) to whom Biolife Health and Wellness, LLC or Linkup Media Group of Companies, Inc. delivered, or caused to be delivered, more than one text message or telephone call within a 12-month period, promoting Biolife Health and Wellness, LLC's or Linkup Media Group of Companies, Inc.'s, or their business partners', goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Biolife Health and Wellness, LLC or Linkup Media Group of Companies, Inc. delivered, or caused to be delivered, at least two of the text messages or telephone calls within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

**Internal Do-Not-Call List Class:**

> All persons throughout the United States (1) to whom Biolife Health and Wellness, LLC or Linkup Media Group of Companies, Inc. delivered, or caused to be delivered, more than one text message or telephone call within a 12-month period, promoting Biolife Health and Wellness, LLC's or Linkup Media Group of Companies, Inc.'s, or their business partners', goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Biolife Health and Wellness, LLC or Linkup Media Group of Companies, Inc. delivered, or caused to be delivered, at least two of the text messages within the 12-month period, (3) who previously instructed Biolife Health and Wellness, LLC or Linkup Media Group of Companies, Inc. not to call them or deliver text messages to them, (4) within four years preceding the date of this complaint through the date of class certification.

48. Excluded from the Classes are Defendants, their officers and directors, members of their or Mr. Annakie's immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

49. Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

50. The exact number of members of the Classes are unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

51. The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

52. In addition, the members of the Classes are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties, including members of the Classes.

53. Plaintiff's claims are typical of the claims of the members of the Classes.

54. As they did for all members of the Federal Do-Not-Call Registry Class, Defendants sent solicitation text messages to Plaintiff's telephone number more than thirty days after Plaintiff registered her cellular telephone numbers with the DNC Registry.

55. As they did for all members of the Internal Do-Not-Call List Class, Defendants sent text messages to Plaintiff's telephone number without previously consulting or cross-referencing their own internal do-not-call list(s), or, in the alternative, Defendants did not maintain such a list.

56. Plaintiff's claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendants.

57. Plaintiff's claims are based on the same theories as are the claims of the members of the Classes.

58. Plaintiff suffered the same injuries as the members of the Classes.

59. Plaintiff will fairly and adequately protect the interests of the members of the Classes.

60. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

61. Plaintiff will vigorously pursue the claims of the members of the Classes.

62. Plaintiff has retained counsel experienced and competent in class action litigation.

63. Plaintiff's counsel will vigorously pursue this matter.

64. Plaintiff's counsel will assert, protect, and otherwise represent the members of the Classes.

65. The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Classes.

66. Issues of law and fact common to all members of the Classes include:

a. For the Federal Do-Not-Call Registry Class, Defendants' practice of sending text messages, for solicitation purposes, to telephone numbers

already registered on the DNC Registry for more than thirty days;

b. For the Internal Do-Not-Call List Class, Defendants' practice of sending text messages, for solicitation purposes, without consulting or cross-referencing against any internal do-not-call lists, including whether Defendants maintained any such lists;

c. Mr. Annakie's responsibility and role in Biolife's or Linkup's delivery of telemarketing text messages to cellular telephone numbers that were already registered on the DNC Registry absent prior express written consent;

d. Defendants' violations of the TCPA; and

e. The availability of statutory penalties.

67. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

68. If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

69. The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

70. The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

71. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also

create and allow the existence of inconsistent and incompatible rights within the Classes.

72. The damages suffered by the individual member of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

73. The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

74. There will be no extraordinary difficulty in the management of this action as a class action.

75. Defendants acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Federal Do-Not-Call Registry Class**

76. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-75.

77. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

78. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

79. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

80. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

81. Biolife and Linkup violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective cellular or residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

82. Biolife and Linkup violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and members of the Federal Do-Not-Call Registry Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

83. As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the members of the Federal Do-Not-Call Registry Class, are entitled to damages in an amount to be proven at trial.

84. Additionally, as the manager, operator, and owner of Biolife and Linkup, and given that he represents that he sent the text messages at-issue, Mr. Annakie either sent, or directed and controlled Biolife and Linkup's decision to send, text messages to Plaintiff's cellular telephone

number, and the cellular telephone numbers of the Federal Do-Not-Call Registry Class, without prior express written consent, despite their registration on the DNC Registry.

85. As a result, Mr. Annakie is also personally and vicariously liable for Biolife and Linkup's conduct, as he personally directed and participated in Biolife and Linkup's violations of the TCPA.

**Count II**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Internal Do-Not-Call Class**

86. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-75.

87. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

88. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), states that no person or entity shall initiate "any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity."

89. Among other standards, the instituted procedures require that Defendants: (1) "must have a written policy, available upon demand, for maintaining a do-not-call list"; (2) must record a "do not call" request and "and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made"; and (3) "must maintain a record of a consumer's request not to receive further calls." *See* 47 C.F.R. §§ 64.1200(d)(1), (d)(3), and (d)(6).

90. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

91. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

92. Upon information and belief, Defendants' decisions to repeatedly ignore Plaintiff's "stop" instructions confirm Defendants' failure to comply with 47 C.F.R. § 64.1200(d), including Defendants' failure to: (1) maintain a list of persons who request not to receive such calls made by or on behalf of Defendants ; (2) have a written policy, available upon demand, for maintaining a do-not-call list; (3) record a "do not call" request and place the associated telephone number on Defendants' Internal DNC List at the time the request is made; and (4) maintain a record of a consumer's request not to receive further calls.

93. As a result, Defendants violated 47 C.F.R. §§ 64.1200(d), (d)(1), (d)(3), and (d)(6) by failing to: (1) maintain a list of persons who request not to receive such calls made by or on behalf of Defendants; (2) have a written policy, available upon demand, for maintaining a do-not-call list; (3) record a "do not call" request and place the associated telephone number on Defendants' internal do-no-call list at the time the request is made; and (4) maintain a record of a consumer's request not to receive further calls.

94. Defendants therefore also violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and members of the Internal Do-Not-Call Class, more than

one solicitation call or text message in a 12-month period that violated 47 C.F.R. § 64.1200(d).

95. As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. §§ 64.1200(d), (d)(1), (d)(3), and (d)(6), Plaintiff, and the members of the Internal Do-Not-Call Class, are entitled to damages in an amount to be proven at trial.

96. Additionally, as the manager, operator, and owner of Biolife and Linkup, and given that he represents that he sent the text messages at-issue, Mr. Annakie either sent, or directed and controlled Biolife and Linkup's decision to send, text messages to Plaintiff's cellular telephone number, and the cellular telephone numbers of the Internal Do-Not-Call Class, without implementing or using an Internal DNC List.

97. As a result, Mr. Annakie is also personally and vicariously liable for Biolife and Linkup's conduct, as he personally directed and participated in Biolife and Linkup's violations of the TCPA.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Adjudging and declaring that Defendants violated 47 C.F.R. §§ 64.1200(d)(4) and 64.1200(d)(6);

b. Enjoining Defendants from continuing their violative behavior, including continuing to deliver solicitation text messages to telephone numbers after being instructed to stop doing so;

c. Awarding Plaintiff damages under 47 U.S.C. § 227(c)(5)(B);

d. Awarding Plaintiff treble damages under 47 U.S.C. § 227(c)(5)(C);

e. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

f. Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: August 1, 2025

*/s/ Alex D. Kruzyk*
Alex D. Kruzyk (to seek admission *pro hac vice*)
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
akruzyk@pkglegal.com

*Counsel for Plaintiff and the proposed classes*